UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **WHITNEY BANK** | **CIVIL ACTION NO. 14-208** |
| **VERSUS** | **JUDGE JOHN W. deGRAVELLES** |
| **BASSAM NAFEL,** | **MAGISTRATE JUDGE RICHARD L.** |
| **ESLAM MAHMOUD, AND** | **BOURGEOIS, JR.** |
| **CENTURY SURETY COMPANY** | |

## ORDER

Before the Court is Plaintiff Whitney Bank's Motion for Summary Judgment. (Doc. 10.) Defendant has filed an Opposition (Doc. 16), to which Plaintiff has replied (Doc. 17). No oral argument is necessary.

After carefully considering the law, facts in the record, and arguments of the parties, the Court grants in part and denies in part Whitney Bank's Motion for Summary Judgment. (Doc. 14-2.)

I. **Facts and Procedural History**

A. **Agreements Between the Parties**

1. **The Promissory Notes**

Whitney Bank loaned money to Defendant, Bassam Nafel, on two different occasions. (Doc. 14-2, p. 3.) On May 11, 2011, Nafel executed a promissory note in the original, maximum principal amount of $125,000 (hereinafter, the "$125,000 note"). (Doc. 14-4, pp. 1-2.) On August 31, 2010, Nafel executed a promissory note in the original, maximum principal amount of $200,000 (hereinafter, the "$200,000 note"). (Doc. 14-4, pp. 3-4.)

2. **The Donmmoor Property**

On June 1, 2010, Defendant Nafel and Defendant Eslam Mahmoud, as Mortgagors, Defendant Nafel as borrower, and Whitney Bank as Mortgagee, entered into a Multiple Indebtedness

1

Mortgage (hereianfter the "Donmoor Mortgage"). (Doc. 14-2, p. 5.) To secure all indebtedness owed by Nafel and Mahmoud to Whitney Bank, including the $125,000 note and the $200,000 note, Nafel and Mahmoud specifically mortgaged, affected and hypothecated in favor of Whitney Bank all of their present and future rights, title, and interest in and to property located at 1140 North Donmoor Avenue, Baton Rouge, Louisiana (hereinafter, "the Donmore property").

In an Assignment of Leases and Rents (hereinafter, the "Donmoor Assignment") executed on the same day, Nafel and Mahmoud pledged, assigned, and granted to Whitney Bank a continuing security interest in all leases and rents of the Donmoor Property to secure all present and future indebtedness owed by Nafel and/or Mahmoud to Whitney Bank. (Doc. 14-2, p. 6; Doc. 14-8.) The Donmoor Assignment contains a provision under which failure to make certain monthly payments when due under the indebtedness owed to Whitney Bank, including the $125,000 note and the $200,000 note, constitutes an event of default. (Doc. 14-2, p. 6; Doc. 14-8.)

The Donmoor Assignment also granted the following specific rights to Whitney Bank: "to accelerate the maturity of and to declare any and all Indebtedness then owed to Lender to be immediately due and payable," "to notify individual lessees, sublessees, and/or obligors under such obligations to pay such proceeds and payments directly to Lender," "to file suit, either in its own name or in the name of the Grantor, to enforce any obligations and/or collect any and all such proceeds and payments that may in future be due and owing under the Property," "to attach any deposit accounts in which such proceeds or payments were deposited, whether or not such proceeds or payments were commingled with other funds of Grantor, and whether or not such proceeds or payments then remain on deposit in such an account," and "subject to any mandatory requirements under applicable Louisiana law, to sell or otherwise dispose of and deliver the property...at private

or public sale." (Doc. 14-2, pp. 6-7, quoting Doc. 14-8.)

On June 1, 2010, Nafel and Mahmoud, as Grantors, and Whitney Bank, as Lender, entered into a commercial security agreement (hereinafter, the "First Security Agreement"). (Doc. 14-2, p. 9, citing Doc. 14-9.) Nafel and Mahmoud granted to Whitney Bank a continuing security interest in the Assignment of Leases and Rents on the Donmoor Property, to secure all indebtedness owed by Nafel and Mahmoud to Whitney Bank in any way and under any agreement, including the $125,000 note and the $200,000 note, with principal, interests, costs, expenses, attorney's fees, and other fees and charges. (Doc. 14-2, p. 9, citing Doc. 14-9.) The First Security Agreement contains a provision by which failure by Nafel and/or Mahmoud to make monthly payments when due under any agreement with Whitney Bank constitutes an event of default under the First Security Agreement. (Doc. 14-2, p. 9, citing Doc. 14-9.) In the event of default, Nafel and Mahmoud agreed to pay, upon demand, all of Whitney Bank's costs and expenses, including reasonable attorneys' fees incurred in connection with the enforcement of the security agreement, in an amount not exceeding 25% of the principal balance due on the indebtedness. (Doc. 14-2, pp. 9-10, citing Doc. 14-9.)

### 3.    The Stern Property

On August 31, 2010, Nafel and Mahmoud, as Mortgagors, Nafel as Borrower, and Whitney Bank as Mortgagee, entered into a Multiple Indebtedness Mortgage (hereinafter, the "Stern Mortgage"). (Doc. 14-2, p. 7; Doc. 14-7.) To secure all indebtedness owed by Nafel and Mahmoud to Whitney Bank, including the $125,000 note and the $200,000 note, Nafel and Mahmoud each specifically mortgaged, affected and hypothecated unto and in favor of Whitney Bank any and all of their present and future rights, title and interest in and to property located at 8282 Stern Avenue, Baton Rouge, Louisiana (hereinafter, the "Stern Property").  The Stern Mortgage provides that

Whitney Bank shall have the right to, at its sole option, accelerate the maturity and demand immediate payment in full of all indebtedness, and to commence appropriate foreclosure proceedings against the Stern Property and against Mortgagor's Rights as provided in the Mortgage. (Doc. 14-2, p. 8, citing Doc. 14-7.)

An Assignment of Leases and Rents was also executed on August 31, 2010 (hereinafter, the "Stern Assignment"). (Doc. 14-2, p. 8; Doc. 14-8.) Therein, Nafel pledged, assigned and granted to Whitney Bank a continuing security interest in all leases and rents of the Stern Property, to secure all present and future indebtedness owed by Nafel to Whitney Bank. (Doc. 14-2, p. 8, citing Doc. 14-8.) Nafel's failure to make certain monthly payments when due under the indebtedness owed to Whitney Bank, including the $125,000 note and the $200,000 note, constitutes an event of default under the assignment. (Doc. 14-2, p. 8, citing Doc. 14-8.)

On August 31, 2010, Nafel and Mahmoud, as Grantors, and Whitney Bank, as Lender, also entered into a commercial security agreement (the "Second Security Agreement") under which Nafel granted to Whitney Bank a continuing security interest in the Assignment of Leases and Rents on the Stern Property, to secure all Indebtedness owed by Nafel and Mahmoud to Whitney Bank in any way and under any agreement, including the $125,000 note and the $200,000 note. (Doc. 14-2, p. 10, citing Doc. 14-10.) Failure by Nafel to make certain monthly payments when due under any agreement with Whitney Bank constitutes an event of default under the Second Security Agreement. (Doc. 14-2, p. 10, citing Doc. 14-10.) Defendants agreed to pay, upon demand, all of Whitney Bank's costs and expenses, including reasonable attorneys' fees incurred in connection with the enforcement of the Second Security Agreement, in an amount not to exceed 25% of the principal balance due on the indebtedness. (Doc. 14-2, pp. 10-11, citing Doc. 14-10.)

### 4. Default

Both promissory notes contain the following cross-default provision:

> DEFAULT. Each of the following shall constitute an event of default ("Event of Default") under this Note:
>
> \*\*\*
>
> Other Defaults in Favor of Lender. Should Borrower or any guarantor of this Note default under any other loan, extension of credit, security right, instrument, document, or agreement or obligation in favor of Lender.

(Doc. 14-4, p. 1, 3.)

Under this cross-default provision, if the borrower is found to be in default on any loan, he is automatically put into default on all loans, including the $125,000 note, the $200,000 note, the Donmoor Mortgage, the Stern Mortgage, the Donmoor Assignment, the Stern Assignment, the First Security Agreement, and the Second Security Agreement. (Doc. 14-4, p. 1, p. 3.)

### 5. The Stern Property Fire

Following the execution of the notes, the Stern Property was damaged by fire. Under the Stern Mortgage, after a damaging event such as a fire, Whitney Bank expressly has the "right to receive the proceeds of all insurance protecting the Property." (Doc. 14-2, p. 7, quoting Doc. 14-7.) The Stern Mortgage provides, "[a]ll insurance proceeds may be applied, at [Whitney Bank's] sole option and discretion...for the purpose of (1) repairing or restoring the lost, damaged, or destroyed property; or (2) reducing the then outstanding balance of the Indebtedness." (Doc. 14-2, p. 7, quoting Doc. 14-7.)

### B. Default by Nafel

Whitney Bank claims that Nafel has defaulted under all agreements. (Doc. 14-2, p. 2.) Whitney Bank claims that Mahmoud solidarily joined with Nafel to grant the Donmoor Mortgage, the Stern Mortgage, the Donmoor Assignment, and the First Security Agreement. (Doc. 14-2, p. 2.) Accordingly, Whitney Bank made amicable demand on Nafel and Mahmoud, but claims that Nafel and Mahmoud have failed to pay the amounts past-due and owing under the promissory notes and other agreements. (Doc. 14-2, p. 2.) Whitney Bank claims it is also entitled to recover all proceeds of insurance paid to Nafel following the fire at the Stern Property. (Doc. 14-2, p. 2.)

Whitney Bank claims it sent demand letters to Nafel on September 12, 17, and 18, 2013, placing Nafel in default and exercising its right to accelerate the amounts due under the $125,000 note, making all amounts due under the $125,000 note immediately due and payable. (Doc. 14-2, p. 11.) Whitney Bank claims it sent demand letters to Nafel on September 12 and 17, 2013, placing Nafel in default on the $200,000 note, exercising its right to accelerate the amounts due under the $200,000 note, and making all amounts under the $200,000 note immediately due and payable. (Doc. 14-2, p. 11.) Whitney Bank claims that Defendants have not yet paid the amount owed. (Doc. 14-2, p. 11.)

On February 19, 2014, Whitney Bank filed this suit against Nafel and Mahmoud in the 19th Judicial District Court of Louisiana. (Doc. 14-2, p. 3.) Century Surety Company was originally made a defendant to this suit but was later dismissed. (Doc. 14-2, p. 3.) Prior to its dismissal, Century Surety Company removed this suit to this Court. (Doc. 14-2, p. 3.)

Whitney Bank claims that, in the event of a default by Nafel and/or Mahmoud, it has the right to declare formally the promissory note to be in default, to accelerate the maturity, and to insist upon immediate payment in full of the unpaid principal balance then outstanding under the

Promissory Notes, plus the accrued interest, together with reasonable attorneys' fees, costs, expenses and other fees and charges provided in the agreements. (Doc. 14-2, p. 4.)

Whitney Bank argues that it is entitled to the total amount due under both of the Promissory Notes as of April 29, 2014, which it asserts equals $319,793.22, consisting of $306,447.82 in principal, accrued interest through April 29, 2014 of $11,776.59, interest continuing to accrue from April 30, 2014 on the amounts outstanding at 18% per annum until paid, late charges of $518.81, other charges in connection with the enforcement of $1,050.00, plus reasonable attorneys' fees, not to exceed 25% of the principal balance due on each of the notes referenced above, and all costs of these proceedings. (Doc. 14-2, p. 5.)

Whitney Bank also believes it is entitled to a declaration recognizing that (1) the Donmoor Mortgage and the Stern Mortgage secure all Indebtedness owed to Nafel and Mahmoud to Whitney Bank, (2) that Whitney Bank has a first ranking mortgage on the Donmoor Property and the Stern Property, (3) that Whitney Bank and its designated representatives are entitled to exercise all rights to foreclosure upon, seize, and sell the Donmoor Property and the Stern Property, and (4) Whtiney Bank's remaining rights as set forth in the Donmoor Mortgage and Stern Mortgage. (Doc. 14-2, p. 12.)

Whitney Bank also argues that in addition to the above, pursuant to the Assignment of Leases and Rents on the Donmoor Property, the Assignment of Leases and Rents on the Stern Property, the First Security Agreement and the Second Security Agreement, it is entitled to a declaration that Whitney Bank has a right to and security interest in the leases and rents on the Donmoor Property and the Stern Property, for all indebtedness owed to Whitney Bank by Nafel and/or Mahmoud. (Doc. 14-2, p. 12.) Whitney Bank seeks an order directing that all lease payments

made with respect to the Donmoor Property and the Stern Property be paid directly to Whitney Bank, until all indebtedness owed to Whitney Bank by Nafel and/or Mahmoud is paid in full. (Doc. 14-2, pp. 12-13.)

Finally, Whitney Bank argues that, pursuant to the Stern Mortgage and the Second Security Agreement, Whitney Bank is the agent and attorney-in-fact for Nafel and Mahmoud, coupled with an interest to make, settle, and adjust claims under the insurance policy covering the Stern Property. (Doc. 14-2, p. 13.) Whitney Bank argues that it has the express right to all proceeds paid and to be paid due to the fire damage to the Stern Property, including the $20,000 that Century Surety Company previously paid to Nafel. (Doc. 14-2, p. 13.) Whitney Bank believes that it is entitled to a declaration by the Court that it has a right to receive all proceeds from property damage insurance on the Stern Property, not to exceed the balance of all amounts owed to it by Nafel and Mahmoud. (Doc. 14-2, p. 13.)

## II.    Law and Argument

### A.    Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts … [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)(internal citations omitted).  The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a

'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (citations and internal quotations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the non-moving party could arrive at a verdict in that party's favor, the court must deny the motion.

*International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

### B.    Application of Louisiana Law

The Notes, Mortgages, Assignments, and Agreements that Plaintiff and Defendant entered into each provide that they are, "governed by federal law applicable to [Plaintiff] and, to the extent not preempted by federal law, the laws of the State of Louisiana without regard to its conflicts of law provisions." (Doc. 14-4, P. 3); (Doc. 14-6, P. 7); (Doc. 14-7, P. 14. Additionally, each Mortgage and Agreement state that they "[have] been accepted by [Plaintiff] in the State of Louisiana." (Doc. 14-4, P. 3); (Doc. 14-6, P. 7); (Doc. 14-7, P. 14.) Therefore, as federal law does not preempt Louisiana law in this area, in accordance with the contracts, Louisiana law governs.

Louisiana law provides that "[i]n an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings." La. Rev. Stat. 10:3-308. "When signatures are admitted or established, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense." *Am. Bank v. Saxena*, 553 So. 2d 836, 842 (La. 1989). "A negotiable instrument must (a) be signed by the

maker or drawer; and (b) contain an unconditional promise to pay a sum certain in money; and (c) be payable on demand or at a definite time; and (d) be payable to order or to bearer." *Id.*

The Eastern District has explained:

> Louisiana law unquestionably states that in a suit for collection of a promissory note and guaranty, the plaintiff may simply produce the notes sued upon to make out a prima facie case. *Humphrey v. Humbrecht*, 427 So.2d 461 (La.App. 5th Cir.), *writ denied,* 433 So.2d 1052 (La.1983); *Fontenot v. LaFleur,* 281 So.2d 868 (La.App. 3rd Cir.), *writ denied,* 284 So.2d 336 (La.1973). … "Once the notes are introduced into evidence, the burden shifts to the defendant to establish the non-existence or extinguishment of the obligation." *Citizens Bank & Trust Co. v. Consolidated Terminal Warehouse, Inc.,* 460 So.2d 663, 672 (La.App. 1st Cir.1984).

*Gulf Fed. Sav. & Loan Ass'n v. Mulderig*, 742 F. Supp. 358, 362 (E.D. La. 1989).

**C.     Prima Facie Case for Enforcement of Promissory Note**

To make out a prima facie claim for enforcement of a promissory note, the plaintiff need only produce the note in question. *Jackson Hospitality, L.L.C. v. Zayed*, 2011 WL 856419, *3 (La. App. 1 Cir. 2011); *Wells Fargo Home Mortg. v. Celestin*, 8 So. 3d 634, 637-638 (La. App. 5th Cir. 2009); *Colonial Mortg. & Loan Corp. v. James*, 812 So.2d 817, 820 (La. App. 4 Cir. 2002) ("the plaintiff must merely produce the note in question to make out a prima facie case. The burden then shifts to the defendant to prove any affirmative defenses...The burden is not on the plaintiff to prove the affirmative defense of non-payment"). "Unless specifically denied in the pleadings[,] each signature on an instrument is admitted." *Am. Bank v. Saxena*, 553 So.2d 836, 842 (La. 1989); see also La. R.S. § § 3-104(a), (b), and 10:3-308. Once the maker has admitted signing the note, "the holder of the note is entitled to recover in the absence of any further evidence." See *Estate of A.E. Pittman v. Pittman*, 69 So. 3d 1254, 1257 (La. App. 4 Cir. 2011).

When the words of the contract are clear, explicit, and do not lead to absurd consequences, "no further interpretation may be made in search of the parties' intent." *Woolf & MaGee v. Hughes*, 666 So.2d 1128, 1130-1131 (La. App. 3d Cir. 1995); *American Deposit Ins. Co. v. Myles*, 783 So.2d 1282, 1286 (La. 2001). The rules of strict construction do not authorize "the exercise of inventive powers" to create ambiguity where none exists nor "refine away terms of a contract expressed with sufficient clearness to convey the plain meaning of the parties." *Woolf & MaGee*, 666 So. 2d at 1131. Simply put, "when a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law and summary judgment is not appropriate." *Iberia Bank v. 3-D Acquisition Company, L.L.C.*, 921 So.2d 249, 252 (La. App. 5 Cir. 2006), citing La. Civ. Code art. 2046.

Whitney Bank has presented the promissory notes executed by Nafel and Mahmoud. (Doc. 14-2, p. 15; Doc. 14-4.) It has also produced an affidavit from Eugene P. Fisher, III, Vice President of Whitney Bank, which purports to authenticate the two Promissory Notes. (Doc. 14-3.)

Nafel and Mahmoud, in their Answer, initially denied that Whitney Bank was the holder of the Notes. (Doc. 12, P. 4 ¶ 1.) However, Nafel and Mahmoud abandoned this argument after Whitney Bank produced the Notes in connection with their Motion for Summary Judgment. (Doc. 14-2.) Nafel and Mahmoud now admit that they "obtained financing from Whitney and executed promissory notes in the amount of $125,000 for Stern property and $200,000 on Donmoor." (Doc. 16, p. 1.)

Having admitted to obtaining the two Notes, the burden is on the Nafel and Mahmoud to prove any affirmative defenses. In their Response Memorandum, Nafel and Mahmoud raise a number of defenses, but do not provide citation to any authority supporting the same. Each defense

is discussed in turn below.

### D. Affirmative Defenses

#### 1. No Cause of Action

The first Affirmative Defense raised by Nafel and Mahmoud in their Answer is that Whitney Bank does not have a cause of action upon which relief can be granted because Whitney Bank has force-placed insurance on the Stern Property and may be paid insurance proceeds from that policy. (Doc. 12, p. 1.) Whitney Bank argues that the force-placed insurance policy between Lloyd's of London and Whitney Bank does not grant or stipulate any rights or benefits to Nafel. (Doc. 14-2, p. 16.) Under the plain language of the policy, Nafel and Mahmoud are in no way third party beneficiaries of the policy. (Doc. 14-12.) Thus, the debts they owe are unaffected by the policy in place between Whitney Bank and Lloyd's of London. La. Civ. Code Art. 1978. Moreover, as Whitney Bank points out, there is no suspensive condition in the Promissory Notes requiring it to wait and collect insurance proceeds, if any, before demanding payment.

As Nafel and Mahmoud's obligations under the Promissory Notes is not alleviated by the existence of the Lloyd's of London policy, there is no genuine issue of material fact to preclude the granting of summary judgment raised by the existence of this policy.

#### 2. Failure to Include Indispensable Parties

The second Affirmative Defense raised by Nafel and Mahmoud is that Whitney Bank failed to include indispensable parties to the matter in its suit, claiming that Lloyd's of London and Century Surety Company "may be affected by this matter." (Doc. 12, p. 1-2.) Federal Rule of Civil Procedure 19(a)(1) requires parties to be joined if either (1) in that party's absence the Court cannot accord complete relief among existing parties, or (2) if the party claiming an interest in the action

is so situated that disposing of the action in the party's absence may impair or impede the party's ability to protect the interest, or may leave an existing party subject to a risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Neither Lloyd's of London nor Century Surety Company are "required parties" pursuant to Fed. R. Civ. Proc. 19(a)(1). The insurers are not parties to the promissory notes, mortgages, or security agreements at issue herein, nor do they have any rights or obligations thereunder. Thus, the fact that these two parties were not added as defendants by Whitney Bank does not preclude summary judgment in this matter.

### 3. Detrimental Reliance

It is undisputed that a fire occurred at the Stern Property on or about July 11, 2013. (Doc. 16, p. 2.) Nafel and Mahmoud argue that the occurrence of this fire resulted in a loss of income on the property. (Doc. 16, p. 2.) Nafel avers that, at the time, he believed he had a policy from Century Surety Company which insured the Stern Property for $500,000. (Doc. 16, p. 2.) Nafel later discovered that the policy only covered the Stern Property in the amount of $350,000. (Doc. 16, p. 2.) Nevertheless, Nafel and Mahmoud argue that the Century policy in force and effect at the time of the fire had sufficient coverage to pay off both of the notes to Whitney Bank, who was an additional insured under the policy. (Doc. 16, p. 2.) A force-placed policy issued to Whitney Bank, as discussed above, also provided coverage for the Stern Property at the time of the fire. (Doc. 16, p. 2.) Nafel and Mahmoud argue that they paid for this coverage, as shown on Whitney Bank'[s payment sheet, which reflects that Whitney Bank charged Nafel and Mahmoud $2,389.00 for hazard insurance on January 1, 2013. (Doc. 16, p. 2.)

According to Nafel and Mahmoud, it took several months to obtain payment on the

loss from Century Surety Company. (Doc. 16, p. 2.) During this time, Nafel and Mahmoud continued to make payments on the Donmoor Property. (Doc. 16, p. 3.) However, Nafel claims he advised Whitney Bank of the fire and his resulting loss of income, and was led to believe that it would not be a problem to defer payments until the insurance proceeds were received. (Doc. 16, p. 3.)

Nafel and Mahmoud assert that they should not be held liable because they detrimentally relied on Whitney Bank's assertion that "payments were not necessary as there was insurance coverage in place from which Plaintiff would obtain the payment on the loans." (Doc. 12, p. 3.) Whitney Bank alleges that these allegations are false. (Doc. 14-2, p. 17.) It argues that even if this were true, an oral agreement to forebear is unenforceable under Louisiana law. (Doc. 14-2, p. 17.)

Agreements to forebear on the repayment of money are "credit agreements." La. R.S. § 6:1121(1) ("'Credit agreement' means an agreement to lend or forebear repayment of money or goods or to otherwise extend credit, or make any other financial accommodation"); see also *Knight v. Magee*, 835 So.2d 636 (La. App. 1st Cir. 2002). "In an action by a creditor, the debtor shall not assert a defense based on the terms and conditions of a credit agreement, unless the agreement is in writing, expresses conditions, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." La. R.S. § 6:1122.1(A)(1).

The Louisiana Supreme Court has explained:

[The credit agreement statutes] were enacted primarily to limit the most frequent lender liability claims—those which involve assertions of breach of oral agreements to lend, to refinance or to forebear from enforcing contractual remedies—by requiring a writing as a prerequisite for a debtor to sue a lender and thus precluding debtors from bringing claims based on oral agreements. The goal was to prevent bank customers from bringing baseless lender liability claims against banks alleging breaches of undocumented side agreements

between the customer and one or more bank officers. … Thus, the primary legislative purpose in enacting credit agreement statutes was to establish certainty as to the *contractual* liability of financial institutions.

*Whitney Nat. Bank v. Rockwell*, 661 So.2d 1325, 1329-30 (La.1995) (internal citations and quotations omitted)(emphasis in original).

The *Rockwell* Court further explained that "[The Louisiana credit agreement statute] in effect provides a statue of frauds in actions based on credit agreements as defined in the statute." *Id.* at 1331.

Furthermore, the Fifth Circuit, in analyzing the Louisiana Credit Agreement Statute, has explained:

The Louisiana Credit Agreement Statute operates as a "statute of frauds" for the credit industry. *King v. Parish Nat'l Bank*, 885 So. 2d 540, 546, 2004-0337 (La. 10/19/04). Actions brought by debtors based on credit agreements cannot be maintained unless "the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." La.Rev.Stat. § 6:1122 (2005). The purpose of the statute is "to prevent potential borrowers from bringing claims against lenders based upon oral agreements;" its effect is to bar "all actions for damages arising from oral credit agreements, regardless of the legal theory of recovery asserted." *Jesco Const. Corp. v. Nationsbank Corp.*, 830 So. 2d 989, 992, 2002-0057 (La. 10/25/02). The statute has also been held to reach actions based on implied agreements from a course of dealings or a "previous business relationship." *King*, 885 So.2d at 548.

*EPCO Carbon Dioxide Products, Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 469 (5th Cir. 2006).

In this case, Nafel and Mahmoud's claim of detrimental reliance based on a verbal agreement is not only barred by Louisiana law, such a claim is the primary reason Louisiana enacted a "statute of frauds" for credit agreements. Thus, Nafel and Mahmoud's argument in this regard fails.

15

### E.     Amount Due

Whitney Bank claims that no payments have been made on either of the Notes. (Doc. 1-2, P.1.) It claims that the total amount past-due and owing under the $125k Note, as of April 29, 2014, was $125,873.36, consisting of $124,025.53 in principal, $1,055.79 in interest, $92.04 in late charges, and $700.00 of other charges in connection with enforcement. (Doc. 14-2, P. 4).

Whitney Bank claims that the total amount past-due and owing under the 200k Note, as of April 29, 2014, was $193,919.86, consisting of $182,422.29 in principal, $10,720.80 in interest, $426.77 in late charges, and $350.00 of other charges in connection with enforcement. (Doc. 14-2, P. 4).

The amounts claimed by Whitney Bank are supported by the Declaration of Eugene P. Fisher, III, the Vice President of Whitney Bank who is responsible for pursuing collection of the amounts owed by Nafel and Mahmoud. (Doc.14-3.) His Declaration meets all of the requirements of Rule 56(c)(4), and 28 U.S.C. § 1746.[1]

Nafel and Mahmoud contest the total amount due under the Notes in their Statement of Uncontested Material Facts. (Doc. 16-1 P. 3 ¶ 6.) They claim that Whitney Bank has continued to accept payment on the $125,000 Note, and that Nafel is current on the $125,000 Note. (Doc. 16, P. 5.) Additionally, Nafel and Mahmoud admit that they are not current on payments on the $200,000 Note. (Doc. 16, P. 3.)

Nafel and Mahmoud provide a "History Summary" attached to their affidavits that evidence

---

[1] The Fifth Circuit has explained that 28 U.S.C. § 1746 "permits unsworn declarations to substitute for an affiant's oath if the statement contained therein is made 'under penalty of perjury' and verified as 'true and correct'" *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988). Fisher's Declaration "declare[s], under penalty of perjury, that the following is true and correct …" (Doc. 14-3, P. 1.) Thus, his Declaration satisfies the requirement.

16

payments on the $125,000 Note. (Doc. 16-2, P. 6.)[2] The principal amount due in the "History Summary" matches the principal claimed; however, there is no clear showing of the interest, late payments, or additional charges owed to Whitney Bank. (Doc. 16-2, P.6.) The payment evidence provided by the affidavits contradicts the Declaration made by Fisher, which stated that no payments were made. (Doc. 14-3, P. 1 ¶ 5.) However, both of Defendants' affidavits fail to meet the requirements of Federal Rule of Civil Procedure ("Rule") 56(c)(4).

Rule 56(c)(4) provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on *personal knowledge*, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed.R.Civ.P.56(c)(4) (emphasis added). Nafel and Mahmoud's affidavits do not provide that any information contained within are based on "personal knowledge." Rather, Nafel and Mahmoud's affidavits contain numerous statements that they "believe" certain facts and both mention facts "based on information and believe[sic]." (Doc. 16-2, P. 1-4); (Doc. 16-3, P. 1-4.)

The Fifth Circuit has explained that summary judgment evidence is required "to be based on personal knowledge and not based on information and belief." *Bolen v. Dengel*, 340 F.3d 300, 313 (5th Cir.2003); *see also Richardson v. Oldham*, 12 F.3d 1373, 1378 (5th Cir.1994) (holding that statements based on information and belief are insufficient to meet the personal knowledge requirement.); *Jameson v. Jameson*, 176 F.2d 58, 60 (D.C.Cir.1949) ("Belief, no matter how sincere, is not equivalent to knowledge.").

---

[2] The account "history summary" Defendants provide does not clearly state which Note payments are being made on. However, the principal balance due on the history summary matches the principal amount due as of January 31, 2014 in the Plaintiff's Complaint, as well as the principal amount due as of April 29, 2014 in Plaintiff's Memorandum in Support of Summary Judgment. (Doc. 1-2, P. 3 ¶ 22); (Doc. 14-2, P. 4); (Doc. 16-2, P. 6.) Thus, it is reasonable to infer that these payments are on the $125k Note.

In *Bolen*, the Defendant stated in an affidavit that "on information and belief, and to the best of affiant's recollection, the original letter was timely signed by affiant and Deborah Walworth [his wife] ..." *Bolen*, 340 F.3d at 313. The *Bolen* court struck the affidavit for failure to meet the requirements of the rule. *Id.* In this case, Nafel and Mahmoud similarly based their affidavits on their personal beliefs. Thus, like in *Bolen*, Defendants Nafel and Mahmoud's affidavits fail to meet the personal knowledge requirement and should be struck and not be considered by the Court.

As Nafel and Mahmoud's affidavits cannot be considered by the Court, there is no evidence to contradict the Declaration made by Whitney Bank's representative. Thus, with no evidence to the contrary and no viable affirmative defense, there is no genuine question of material fact that can prevent a summary judgment holding that Nafel and Mahmoud are liable for the amounts due under the promissory notes, and summary judgment in this regard is granted.

However, Whitney Bank has provided no evidence to support the amounts owed for reasonable attorneys' fees or any "other amounts provided for" by the Notes. As to these two portions of Whitney Bank's Motion for Summary Judgment, Whitney Bank's Motion is denied without prejudice.

**F.     Insurance Proceeds**

Whitney Bank alleges that it is entitled to the $20,000 in insurance proceeds already paid to Nafel and Mahmoud by Whitney Bank. (Doc. 17, p. 9, citing Doc. 14-7.) The Stern Mortgage provides that Whitney Bank "shall have the right to directly receive the proceeds of all insurance protecting the property." (Doc. 17, p. 9, quoting Doc. 14-7.) Nafel and Mahmoud claim that the proceeds were paid as a "business loss payment" which "is an additional loss over the amount of the building loss to which Whitney is not entitled." (Doc. 16, p. 8.)

Whitney Bank has provided no evidence to show that the proceeds were "derived from the sale, lease, damage, destruction, insurance loss, expropriation, and other disposition." (Doc. 14-10.) Whitney Bank is not entitled to summary judgment where no support for their position has been provided. Further, it is possible that the insurance proceeds in question arose from a business loss policy unrelated to the "sale, lease, damage, destruction, insurance loss, expropriation, and other disposition" of the property. Therefore, Whitney Bank's Motion for Summary Judgment in this regard is denied.

### G.    Attorney-In-Fact

Whitney Bank prays that the Court enter a declaration stating that it is the attorney-in-fact for Nafel and Mahmoud in regards to insurance proceeds for policies covering the Stern Property. (Doc. 14-2, p. 13; Doc. 17, p. 7.) Nafel and Mahmoud do not deny that Whitney Bank has these rights. Instead, they argue that Whitney Bank "may already have these rights" and does not need a court order stating such in order to be able to settle an insurance claim. (Doc. 16, p. 7.)

Further, the Stern Mortgage provides:

> [Defendants] hereby irrevocably appoints Mortgagee as its agent and attorney-in-fact, such agency being couple with an interest, to make, settle and adjust claims under such policy or policies of insurance and to endorse the name of [Defendants] on any check or other item of payment for the proceeds thereof; it being understood, however, that unless one or more Events of Default exist under this Mortgage, [Whitney Bank] will not settle or adjust any such claim without the prior approval of [Defendants] (which approval shall not be unreasonably withheld).

(Doc. 14-7, P. 5.)

As the Stern Mortgage clearly provides that Whitney Bank is an agent and attorney-in-fact for Nafel and Mahmoud in regards to insurance proceeds covering the Stern Property, and as Nafel and Mahmoud do not contest the same, summary judgment will be granted in this regard.

**H.      Declaratory Relief**

Whitney Bank prays for the following relief, to which Nafel and Mahmoud do not provide opposition:

1.      A declaration recognizing that the Donmoor Mortgage and Stern Mortgage secure all indebtedness owed by Nafel and Mahmoud to Whitney Bank;

2.      A declaration recognizing that Whitney Bank and its designated representatives are entitled to exercise all rights under the mortgages, including Whitney Bank's right to foreclose upon, seize, and sell the properties;

3.      A declaration recognizing that Whitney Bank has the right to lease and rent payments on the Donmoor property and the Stern Property, until all indebtedness owed to Whitney Bank by Nafel and Mahmoud is paid in full; and

4.      An order directing that all lease and rent payments with respect to the Donmoor Property and the Stern Property be paid to Whitney Bank, until all indebtedness owed to Whitney Bank by Nafel and Mahmoud is paid in full.

(Doc. 17, p. 10.)

In support of these requests, Whitney Bank has submitted the Stern Mortgage and Donmoor Mortgage, which provide clauses granting the foregoing. (Doc. 14-7.) Nafel and Mahmoud have raised no opposition and provided no evidence to rebut Whitney Bank's assertions. Accordingly, Whitney Bank's request Declaratory Judgment as to these four items is granted.

Whitney Bank also prays for a declaration recognizing that Whitney Bank has a first ranking mortgage on the Donmoor Property and the Stern Property. However, Whitney Bank has not provided any evidence to suggest that its mortgage is the first ranking mortgage on the Donmoor

Property. (Doc. 14-2; Doc. 17.) Although Nafel and Mahmoud have not opposed this request, the Court cannot grant a summary judgment or declaratory relief on this issue when Whitney Bank has not proven a prima facie case that it holds the first ranking mortgages on the Donmoor Property and the Stern Property. Therefore, Whitney Bank's Motion for Summary Judgment and/or Declaratory Relief in this regard is denied without prejudice.

## III.    Conclusion

Considering the foregoing,

**IT IS ORDERED, ADJUDGED AND DECREED** that Plaintiff Whitney Bank's Motion for Summary Judgment (Doc. 14-2) is GRANTED in part and DENIED in part.

As to Whitney Bank's assertion that it is entitled to the $20,000 insurance proceeds paid to Nafel and Mahmoud by Century Surety, Whitney Bank's Motion for Summary Judgment is DENIED.

As to Whitney Bank's requests for "reasonable attorneys fees" and "other amounts provided for" in the Notes, Whitney Bank's Motion for Summary Judgment is DENIED without prejudice. Whitney Bank will be allowed to file a second Motion for Summary Judgment providing evidence regarding the amounts owed, if any, under these provisions of the Notes.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Whitney Bank's request for Declaratory Relief seeking a declaration from the court stating that it holds the first mortgage on the Donmoor and Stern properties is DENIED without prejudice.

In all other respects, Whitney Bank's Motion for Summary Judgment is GRANTED.

Accordingly,

**IT IS ORDERED, ADJUDGED AND DECREED** that Bassam Nafel be cast in judgment

for all amounts due under the $125,000 note, through the date of the judgment, with per diem amounts calculated thereafter, including without limitation the following:

a. $125,873.36, consisting of $124,025.53 in principal, $1,055.79 in interest as of [] April 29, 2014, $92.04 in late charges, and $700.00 of other charges in connection with enforcement;

b. Interest continuing to accrue on the amounts outstanding at 18.000% per annum from April 30, 2014, until paid in full;

c. All costs of these proceedings and all other relief to which Whitney Bank is entitled;

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Bassam Nafel be cast in Judgment for all amounts due and owing under the $200,000 Note, through the date of judgment with per diem amounts calculated thereafter, including without limitation the following:

a. $193,919.86, consisting of $192,422.29 in principal, $10,720.80 in interest as of April 29,2014, $426.77 in late charges, and $350.00 of other charges in connection with enforcement;

b. interest continuing to accrue on the amounts outstanding at 18.000% per annum from April 30,2014, until paid in full;

c. all costs of these proceedings and all other relief to which Whitney Bank is entitled;

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that all lease and rent payments made with respect to the Donmoor Property and the Stern Property be paid directly to Whitney Bank, until all indebtedness owed to Whitney Bank by Bassam Nafel and/or Eslam Mahmoud is paid in full; and

**IT IS FURTHER ORDERED, ADJUDGE AND DECREED** that Whitney Bank's request

for declaratory relief is granted in the following respects:

1.     the Donmoor Mortgage and Stern Mortgage secure all Indebtedness owned by Bassam Nafel and Eslam Mahmoud to Whitney Bank;

2.     Whitney Bank and its designated representatives are entitled to exercise its rights under the Donmoor Mortgage and the Stern Mortgage, including Whitney Bank's right to foreclosure, seize, and sell the Donmoor Property and Stern Property,

3.     Whitney Bank has the right to the lease and rent payments on the Donmoor Property and the Stern Property, until all indebtedness owed to Whitney Bank by Bassam Nafel and/or Eslam Mahmoud is paid in full; and

4.     Whtiney Bank is the agent and attorney-in-fact for Bassam Nafel and Eslam Mahmoud, and, as such, is authorized to make, settle, and adjust claims under the insurance policy covering the Stern Property.

Signed in Baton Rouge, Louisiana, on March 30, 2015.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**